**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **LINDA DARLENE CATLIN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 12-1474-JWL** |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD) benefits and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding error in the Commissioner's evaluation of Plaintiff's mental impairments, the court ORDERS that the decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

**I.     Background**

Plaintiff applied for SSD and SSI benefits, alleging disability beginning May 14, 2008. (R. 17, 77-83, 518-19).  In due course, Plaintiff exhausted proceedings before the

Commissioner, and now seeks judicial review of the final decision denying benefits. She alleges the Administrative Law Judge (ALJ) erred in numerous respects in evaluating her claim at step four of the Commissioner's five-step sequential evaluation process.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process--determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the

economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that remand is necessary because the ALJ applied the incorrect legal standard when evaluating Plaintiff's mental impairments between step three and step four of the sequential evaluation process.  This remand requires the Commissioner to reassess RFC, and in doing so she must reconsider each error alleged in Plaintiff's brief.  Therefore, it would be premature for the court to address those alleged errors and attempt to provide an advisory opinion in this case.  If desired, Plaintiff may address her remaining arguments to the Commissioner on remand.

## II.     Evaluation of Mental Impairments

Plaintiff argues that in evaluating Plaintiff's mental impairments and in assessing mental RFC limitations the ALJ repeated the psychiatric review technique methodology used at steps two and three of the sequential evaluation process instead of the function-by-function assessment required by Social Security Ruling (SSR) 96-8p.  (Pl. Br. 22).  She points out that within the portion of his decision assessing RFC, the ALJ applied the Commissioner's psychiatric review technique and found that Plaintiff has mild limitations in social functioning.  Id. (citing R. 27).  She argues that Dr. Warrender, the state agency psychiatrist who reviewed the record at the initial evaluation, opined that Plaintiff has "Moderate" difficulties in maintaining social functioning, and is "Moderately Limited" in the ability to interact appropriately with the general public.  (Pl. Br. 22) (citing R. 284, 289).  In further argument, she points out that although Dr. Wilkinson, the psychologist

4

who reviewed the record at the reconsideration evaluation, opined the Plaintiff has only "Mild" difficulties in maintaining social functioning, she also opined that Plaintiff is "Moderately Limited" in the ability to interact appropriately with the general public. Id. (citing R. 451, 456). In conclusion, Plaintiff argues that although the ALJ purported to accord significant weight to the opinions of the state agency psychologists, his RFC assessment regarding social functioning differs from both of these medical sources and he did not acknowledge or explain the reasons for the difference. Id. The Commissioner argues that even though the ALJ accorded significant weight to the opinions of Dr. Warrender and Dr. Wilkinson, he is not obliged to adopt them in every detail. (Comm'r Br. 24) (citing Schmidt v. Astrue, 496 F.3d 833, 845 (7th Cir. 2007); Teneyck v. Astrue, No. 11-1233-JWL, 2012 WL 1901285, at *8 (D. Kan. May 25, 2012)). She points out that the ALJ found no evidence of angry outbursts and that Plaintiff volunteers at a mission involving contact with others, and thereby the Commissioner implies that the ALJ properly discounted Dr. Warrender's and Dr. Wilkinson's opinions regarding restrictions in mental functioning. In her Reply brief, Plaintiff argues that even though the ALJ is not obliged to adopt all of an opinion to which he accords significant weight, he must explain why he assessed a limitation which is different than that opined by a medical source. (Reply 13).

**A.     Standard for Evaluating Mental Impairments**

The Commissioner has promulgated a psychiatric review technique for evaluating mental impairments. 20 C.F.R. §§ 404.1520a, 416.920a. In evaluating the severity of

mental impairments at steps two and three of the sequential evaluation process, the technique provides for rating the degree of functional limitation in each of four broad mental functional areas:  activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  Id. §§ 404.1520a(c) 416.920a(c).  After rating the degree of limitation in each functional area, the Commissioner determines the severity of plaintiff's mental impairments.  Id. §§ 404.1520a(d), 416.920a(d).

When the first three functional areas are rated as "none" or "mild," and the fourth area is rated as "none," the agency will conclude at step two of the sequential evaluation process that plaintiff's mental impairments are not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [plaintiff's] ability to do basic work activities."  Id. §§ 404.1520a(d)(1), 416.920a(d)(1).  If a claimant's mental impairments are severe at step two, the technique requires an evaluation at step three of whether the impairment(s) meets or equals a listed impairment by comparing the step two findings and the medical evidence with the criteria of the listings.  Id. §§ 404.1520a(d)(2), 416.920a(d)(2).  If the Commissioner determines that plaintiff's mental impairments do not meet or equal a listing, she will then assess the claimant's RFC.  Id. §§ 404.1520a(d)(3), 416.920a(d)(3).

In determining RFC, the regulations provide that the Commissioner will consider plaintiff's "ability to meet the physical, mental, sensory, and other requirements of work."  Id. §§ 404.1545(a)(4), 416.945(a)(4).  With regard to assessing mental RFC limitations, the regulations provide that "[a] limited ability to carry out certain mental activities, such

as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce [plaintiff's] ability to do [work.]" Id. §§ 404.1545(c), 416.945(c).

The Commissioner has clarified the difference between evaluating the severity of mental limitations at steps two and three of the sequential evaluation process based upon the broad functional areas identified in the psychiatric review technique, and assessing mental RFC limitations. SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 147 (Supp. 2013). "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in" the four functional areas. Id. RFC must be expressed in terms of specific work-related functions. Id. at 148. "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." Id. at 149. Therefore, an ALJ should not state a mental RFC in terms of the four functional areas, but should make a function-by-function assessment of each of the work-related mental activities relevant to the case at hand.

### B.     The ALJ's Findings

Regarding limitations resulting from mental impairments, the ALJ stated that he "considered the claimant's functioning in the four broad categories noted above." (R. 27). He found that Plaintiff has mild limitations both in activities of daily living and in

social functioning. Id. He gave Plaintiff the benefit of the doubt and found moderate limitations with regard to maintaining concentration, persistence, and pace, but found no record evidence of episodes of decompensation of any duration. Id. He stated that in assessing Plaintiff's mental RFC he gave "great weight" to the opinions of the non-treating consultative psychologist, Dr. Schwartz, and "significant weight" to the opinions of the state agency psychologists,[1] Dr. Warrender, and Dr. Wilkinson. Id. He stated that he gave those opinions significant weight because they are based upon a review of all of Plaintiff's medical records, because the doctors are experts in Social Security rules and regulations, and because the opinions are consistent with Dr. Schwartz's and Dr. Steffan's reports. (R. 27). The ALJ provided a single mental limitation in his RFC assessment--"Mentally, the claimant is limited to unskilled work." (R. 21).

### C. Analysis

In his discussion regarding step three of the sequential evaluation process, the ALJ explained that Plaintiff's mental condition does not meet or medically equal the criteria of Listings 12.04 or 12.06 because the "Paragraph B" criteria relating to limitations in activities of daily living; social functioning; concentration, persistence, or pace; and

---

[1]The court notes that Dr. Warrender is a medical doctor, and as such appears to be a psychiatrist. (R. 274, 290). However, the ALJ stated he gave significant weight to the opinions of the state agency psychologists and identified Dr. Warrender's opinions as two of those opinions. (R. 27) (citing Exhibits B10F and B11F). But, the regulations do not seem to accord greater weight to the opinions of psychiatrists over psychologists, and neither party argues error in this statement of the ALJ. Therefore, the court addresses these opinions, as did the ALJ, as the opinions of the state agency psychologists.

episodes of decompensation are not met. (R. 20-21). He stated that the specific rationale for his findings relating to the four broad areas of mental functioning are "more fully explained below in Finding #5 [(regarding the RFC assessment)]." Id. at 21. He then acknowledged that:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

(R. 21).

As quoted above, the ALJ acknowledged that SSR 96-8p requires a mental RFC assessment which is based upon a function-by function assessment of the various mental abilities contained within the four broad mental categories of Paragraph B (activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation) to be used at steps four and five of the sequential evaluation process. Nevertheless, he did not discuss any of the twenty mental functional abilities recognized by the Commissioner in her "Mental Residual Functional Capacity Assessment" form, and upon which Dr. Warrander and Dr. Wilkinson based and recorded their opinions in this case record. (R. 288-91, 455-58).

As Plaintiff points out, the ALJ accorded significant weight to the opinions of Dr. Warrender and Dr. Wilkinson, and both doctors opined that Plaintiff is moderately limited in the ability to interact appropriately with the general public. (R. 289, 456). This limitation suggests that even if Plaintiff is able to perform significant gainful activity, she may be limited in performing jobs which require various degrees of interaction with the general public. Yet, the ALJ did not even mention this limitation and, more importantly, he did not explain how he reconciled this limitation with the RFC he assessed, or why he rejected the opinions of the state agency psychologists in this regard. As Plaintiff points out, SSR 96-8p requires that if the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why he did not adopt that opinion. West's Soc. Sec. Reporting Serv., Rulings 150 (Supp. 2013). Here, he did not do so. In fact, he did not even acknowledge that there was a conflict between his RFC assessment and the opinions of Dr. Warrender and Dr. Winkinson. This error requires remand for a proper evaluation of Plaintiff's mental RFC.

The Commissioner's argument that the ALJ is not obliged to adopt the opinions of Dr. Warrender and Dr. Wilkinson in every detail, while legally accurate, is beside the point at issue here. While the ALJ need not adopt each limitation opined by the doctors merely because he accorded significant weight to their opinions, he <u>must</u> explain why he rejected the portions of those opinions which he did not adopt.

The Commissioner's argument that the ALJ found no evidence of angry outbursts and that Plaintiff volunteers at a mission involving contact with others, suggests potential

reasons tending to support a determination that Plaintiff is not limited in her ability to interact with the general public. But, it is not the court's prerogative to weigh the evidence and provide a post-hoc rationalization for the ALJ's determination. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005). On remand, the Commissioner will weigh all of the evidence and explain her assessment of Plaintiff's mental limitations.

**IT IS THEREFORE ORDERED** that the decision below shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

Dated this 27th day of June 2014, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**